"WELCH, Judge,
dissenting.
I respectfully dissent. I believe that the majority has erred by upholding the trial court’s order granting the State’s pretrial motion asking the court to find T.T. to be an unavailable witness. I do not believe that the State met its burden of proving that Tenia M. Crow intentionally had T.T. removed from the circuit court’s jurisdiction.
I agree with those facts set forth in the majority opinion. I would supplement those facts with the following.
Crow, Tracy Gaddis, T.T.’s father, and Todd T., are siblings. At the time of the incident T.T.’s father was in prison in Texas and his mother was unable to care for T.T.; therefore, T.T. lived with Crow, his paternal aunt. On February 15, 2013, T.T. went to school with visible bruises believed to have been inflicted by Crow. Later that same day, the police video-recorded an interview with Crow concerning T.T.’s bruises.[1] During a break in the questioning Crow telephoned Gaddis, and according to the State, told Gaddis to get rid of T.T. According to the State, the inference to be taken from this comment was that Crow was instructing Gaddis to remove T.T. from the circuit court’s jurisdiction so that he could not testify against Crow, and, in compliance, Gaddis took T.T. to Texas and left him there. Also, on February 15, 2013, pursuant to a Department of Human Resources (“DHR”) “special care” order, Gaddis took custody of T.T. However, as best I can discern from the record, legal custody of T.T. remained at all times with his mother and father.
Crow was indicted on July 12, 2013, and was arrested on July 24, 2013. Gaddis testified that she took T.T. to Texas at some point in the summer of 2013 for her summer break, after which they returned to Alabama. Crow, the defendant charged with abusing T.T., testified that on September 23, 2013, she found a subpoena for T.T. taped to her front door. Crow stated that she telephoned Gaddis and told her to have T.T. in court for the scheduled October 7, 2013, trial. Gaddis testified that she learned of the October 2013 court date from Crow and took T.T. to court that day. In fact, Gaddis testified that she never received a subpoena for T.T. to appear at any of the scheduled court dates. There was no dispute that Gaddis and T.T. appeared in court on October 7, 2013, for Crow’s trial. However, the trial was continued.
Gaddis testified that she and her family, including T.T., went to see her children in Texas in December 2013 for Christmas. At that time, T.T.’s father, who had been recently released from a Texas prison, took T.T. from Gaddis, and T.T. and his father remained in Texas with Todd.
Crow’s trial was rescheduled for January 13, 2014. The case-action summary reflects that an attempt to serve a subpoena on T.T. on January 6, 2014, was re *354 turned with the notation “no service.” Regarding the continuance of this trial date, Gaddis testified that no one told her that T.T. was supposed to attend court in January, She said that if she had known, she would have brought T.T. back to Alabama with her. Gaddis further testified that while she was still in Texas in December 2013, she spoke with a lady from the district attorney’s office and she told the lady that she was leaving T.T. in Texas in the legal custody of his parents[2] and that the lady said “okay.” (R. 35, 40.) Nevertheless, Gaddis stated that she gave the assistant district attorney (“DA”) her brother Todd’s telephone number and that she was later told that the assistant DA had spoken over the telephone with Todd and that the assistant DA had agreed to postpone the January trial for six months in order to provide Todd time to save money to travel with T.T. to Alabama for trial.
The trial was rescheduled to begin on June 16, 2014. On June 9, 2014, there was a “no service” notation on a subpoena issued for T.T.—again at Crow’s address.[3] The hearing on the State’s motion to find T.T. unavailable was held on June 16, 2014. A guilty plea was entered on June 19, 2014.
If the circuit court believed that Crow could be heard on the video-recording instructing Gaddis to “get rid” of T.T., the State still failed to prove that Crow was guilty of intentionally removing or having someone else remove T.T. from the court’s jurisdiction on the day the trial was to commence. The undisputed testimony was that Gaddis brought T.T. to the October 2013 trial setting and that she did so because Crow telephoned her and told her to do so. In December 2013 T.T.’s father took the child. There was no testimony whatsoever suggesting that Crow played any part in T.T.’s failure to be present at the June 2014 trial date.
Moreover, the idea that Crow allegedly told Gaddis to “get rid” of T.T. came from the prosecutor who asserted that he discerned from the video recording Crow telling her sister to “get rid” of T.T. The prosecutor’s assertion is not evidence in the case. Moreover the assertion was contradicted by State witness Officer Tyler Delashaw, who testified that Crow did not “in this recording ever direct Ms. Gaddis to do anything with [T.T.] (R. 27.) Officer Delashaw testified that Crow stated that “[Gaddis] had to get [T.T.] out of here.” (R. 26.) He then testified that, “You know, we weren’t sure what [‘get [T.T.] out of here’] ... meant.” (R. 26.) Crow and Gaddis testified that Crow telephoned Gaddis to come get T.T. to prevent DHR from placing T.T. in its “system,” In my opinion, the record does not disclose any testimony that conflicts with Crow’s or Gaddis’s testimony in this regard. Further, in my opinion, the comment “get T.T. out of here” is vastly less culpable than the comment “get rid of T.T,” In this regard, the circuit court, which watched and listened to the video-recording, did not enter any findings regarding what the video-recording disclosed. The only finding made by the circuit court was that T.T. was unavailable because he .had been “transported to Texas by the Safety Plan *355 custodian, Tracy Gaddis.” [4] (CR; 182.) This finding was consistent with Gaddis’s testimony and is not evidence of Crow’s guilt.
Therefore, I believe that the circuit court erred in its pretrial ruling that T.T. was an - unavailable witness, thus finding that the State would be allowed to introduce T.T.’s out-of-court statements at the impending trial. I would reverse Crow’s guilty-plea conviction for child abuse and remand this.cause to the circuit court for further proceedings. .Therefore, I dissent.
KELLUM, J., concurs.

. The prosecution referenced Crow’s July recorded interview, but the record discloses that Crow’s interview with the police was recorded on February 15, 2013, the day the incident was reported.

. It is unclear if by "parents” Gaddis meant T.T.'s father or if she meant his mother and father.

. This subpoena is in the record; it reflects that the attempt to serve this subpoena was made at—Foxdale Road, Millbrook, This is the address listed as Crow’s address on several documents in the record. Gaddis’s subpoena was served at—West Wareingwood Drive, Montgomery. Thus, it does not appear that the subpoenas for T.T. were served at Gad-dis’s residence.

. There was conflicting evidence regarding whether 'Gaddis disobeyed instructions from . DHR informing her that she would be responsible for bringing T.T. to court and that she was not to take T.T. out of Alabama, but this testimony was not necessary to the resolution of the issue whether Crow was responsible for T.T.’s absence.